## Armstrong Grocery Company v. Hutchison.

*Aiken & Braham*, for plaintiff; *Alvan M. Shumaker*, for defendant.

HILDEBRAND, P. J., July 31, 1929.—This is an action under the Fraudulent Debtors' Attachment Act of March 17, 1869, P. L. 8, and its supplements, and, having come before the court on a motion to quash the attachment, was argued before the court *in banc*.

The defendant bought of H. C. Turner, on or about March 11, 1929, the merchandise and fixtures of a grocery business without compliance with the Bulk Sales Law of May 23, 1919, P. L. 262. The writ having been issued May 20, 1929, the sheriff levied upon and attached personal property of the defendant consisting of merchandise and fixtures, the writ being served personally upon the defendant.

Defendant's counsel entered a special appearance and moved to quash the attachment, the motion being based upon a number of reasons, among which

are: (1) That the præcipe for the writ is signed Aiken & Braham, averring that that signature is of no efficacy, that it is an assumed or fictitious name and that there has been no compliance with the Fictitious Names Act; (2) that the proceeding is improper as the action does not lie against the defendant; and (3) that plaintiff's bond, filed previous to the issuance of the writ of attachment, was not approved as required by the act.

The Bulk Sales Law of March 28, 1905, provided that a sale, where the act has not been complied with, "shall be deemed fraudulent and voidable against the creditors of the seller." The Bulk Sales Act of May 23, 1919, P. L. 262, provides that when the sale is not in conformity with the act, "then such sale or transfer shall be fraudulent and void, and such purchaser, auctioneer or agent shall, at the suit of any creditor, be held liable to the creditors of the said vendor as a receiver for the fair value of all the property so bought or sold by him."

Neither of these acts relating to bulk sales provides a method of procedure for having a sale in violation of the act determined to be void and for following the property which was the subject of the sale.

In Albert Ochse's Co. v. Drda, 16 Dist. R. 409, 34 Pa. C. C. Reps. 151, the present Chief Justice von Moschzisker held that in the case of violation of the Act of March 28, 1905, P. L. 62, the Act of March 17, 1869, P. L. 8, together with its supplement of May 24, 1887, P. L. 197, formed a complete system for carrying into execution the Bulk Sales Law, saying that: "With the seller, the purchaser and the creditors, all as parties to the action, the goods in controversy are taken into the custody of the law and relief worked out in a most expeditious and inexpensive manner, whereas relief by way of a bill in equity and the appointment of a receiver, with all the limitations which are put upon that office, would make a much more expensive and cumbersome system."

While recognizing that instances may arise where the benefit of the Act of 1905 may be invoked by bill in equity as the most convenient and appropriate remedy, it was held that procedure under the Act of 1869 furnished a plain, complete and adequate remedy at law and the bill in equity was dismissed.

In West Shoe Co. v. Lemish, 279 Pa. 414, a bill in equity, filed by creditors within the statutory period for attacking a sale, was sustained. The purpose of the bill was to have set aside the transaction of sale because of failure to comply with the statute, and it asked that the purchaser be declared a receiver for the fair value of all the property bought by him and that he account to the creditors for the true worth.

The remedy in equity was also recognized in Gibbon v. Arronson, 80 Pa. Superior Ct. 36. The bill in that case, however, was dismissed because the action was not begun within the ninety-day period following the consummation of the sale.

It seems, therefore, that, under the Bulk Sales Law of 1919, the creditors may proceed by attachment under the Fraudulent Debtors' Act of 1869 or by bill in equity to have the sale declared void and the purchaser held to be receiver for the benefit of the creditors.

Defendant concedes that plaintiff might have proceeded by attachment under the Fraudulent Debtors' Act of 1869 if plaintiff had made Turner, the vendor in the sale, a defendant. Defendant, however, contends that plaintiff cannot proceed directly against defendant. In the various cases cited by both plaintiff and defendant, both the seller and the purchaser have been made parties to the action. The Act of May 24, 1887, P. L. 197, provides that the attachment shall issue upon proof by affidavit of the plaintiff that the defendant is justly indebted to the plaintiff "and that said party defendant is about

to move his, her or their property out of the jurisdiction of the court in which said attachment is applied for with intent to defraud his, her or their creditors, or that said party defendant has property, rights in action or interest in any public or corporate stock, money or evidences of debt which he, she or they fraudulently conceal, or that said party defendant has or have assigned, disposed of or removed, or is about to assign, dispose of or remove, any such property, money, rights in action, interest in public or corporate stock or evidences of debt, with the intent to defraud his, her or their creditors, or that he, she or they *fraudulently contracted the debt or incurred the obligation for which such claim is made.*"

The allegation in the present case is "that the defendant fraudulently contracted the debt and incurred the obligation for which claim is made, contrary to the Bulk Sales Law of the Commonwealth of Pennsylvania."

The Fraudulent Debtors' Attachment Act contemplates and provides a special remedy against one who is actually indebted to claimant. The special remedy becomes available against a debtor who intends to defraud either at the time the debt is incurred or subsequently. The debt, however, exists separate and distinct from the fraud. In the present case, there is no debt except as the purchaser is made liable to the creditors of the vendor under the Bulk Sales Law as a receiver. If the liability may be termed a debt, it is inseparably joined with what is made legal fraud by the statute. Under the Act of 1869, goods of the debtor may be seized whether they be in his possession or in the possession of others. In the present case, it certainly could not be contended that the goods of the defendant in the hands of others could have been rightfully seized under the attachment issued. The defendant's obligation is not such as to constitute a debt for which an attachment may issue under the Act of 1869. Her liability as fixed by the Bulk Sales Act is neither personal nor general, but it is limited to that of a receiver for the fair value of the property bought. Although the goods purchased while in her hands may be subject to attachment in a proper proceeding, the defendant's liability becomes fixed only after the vendor's indebtedness has been determined, and that may only be determined in an action to which the defendant's vendor is a party. The proceeding here followed is improper and plaintiff cannot maintain its present action against the defendant: Felix *v.* Urquhart Manuf. Co., 5 D. & C. 93.

The bond filed by the plaintiff was not approved by one of the judges, as required by the Act of 1869, and this, too, is advanced by defendant as a reason why her motion to quash the writ of attachment should prevail. The act is positive in its requirement that a bond approved by one of the judges shall be executed and filed before the attachment shall issue. As has been indicated, the statute provides a special remedy and its requirements must be strictly adhered to.

It is urged by the plaintiff that while the reasons assigned for the quashing of the writ might be sufficient for dissolving the attachment, they are not sufficient to warrant quashing the writ, there having been personal service on the defendant. Biddle *v.* Black, 99 Pa. 380, is cited in support of this position. That was a proceeding under the Act of 1869, in which the debtor and garnishees were summoned and where defendant entered a rule to dissolve the attachment and quash the writ because of the insufficiency of the affidavit filed by plaintiff setting out the cause of action. The appellate court held that the lower court was right in dissolving the attachment, but committed error in quashing the writ, holding that, there having been personal service on the defendant, the action might be pursued against him although the property

was justly released. In that case, the right of action remained against the defendant although the writ of attachment had been improperly issued.

In discussing the distinction between a motion to quash a writ of foreign attachment and one to dissolve the attachment in Pasquinelli v. Southern Macaroni Manuf. Co., 272 Pa. 468, 477, the following rule is laid down: "It is sufficient to say that the broad, or general, distinction is this: Where, notwithstanding the defects pointed out, the suit may remain as a pending action, a motion to dissolve is correct practice; on the other hand, where the defects depended on are fundamental in character and such as to put plaintiff completely out of court, a motion to quash the writ is proper."

It has been held fatal to the writ of attachment and grounds for dissolving the attachment that the bond was not approved by the judge of the court before the attachment issued: Wallace Elliott & Co. v. Plukart, 6 Pa. C. C. Reps. 151; McMasters v. Majewski, 5 D. & C. 279. In Thomas v. Herr, 29 Montg. Co. Law Repr. 165, the writ of attachment under the Act of 1869 was quashed, for the reason that the bond filed had not been approved by a judge. In Security Finance Co. v. Murray, 7 D. & C. 463, the garnishee secured a rule to show cause why the attachment should not be quashed because the bond filed in an attachment under the Fraudulent Debtors' Attachment Act had not been approved by the court before issuance of the attachment. It was held that the garnishee had no standing to move to quash. for this reason, the court, however, saying: "If the present rule had been granted at the instance of the defendant, we would have no hesitation in making it absolute."

In Parks v. Watts, 112 Pa. 4, the writ of attachment issued under the Act of 1869 was held to be properly quashed, for the reason that it was not made returnable on the first return-day next after the issuing thereof, as commanded by the statute. In that case, service had been had upon the defendant. It was held that the "shall" of the statute was imperative and that, there having been a failure to comply with the requirements of the statute, the writ of attachment was properly quashed.

Having reached the conclusion that the failure to have the bond approved by a judge and the fact that plaintiff's pleadings disclose no right of action directly against the defendant are fundamental in character and such as to put plaintiff out of court, we conclude that the motion to quash the writ is proper and that it should be granted.

It thus becomes unnecessary to discuss the matter of the use of the firm name of "Aiken & Braham" in securing the issuance of the writ of attachment. Without attempting or intending to pass upon the effect of this use of the firm name, one of the names being that of an honored member of the bar now deceased, we call attention to the propriety of the practice followed in the appellate courts of having the names of the individual members of the firm appear along with the firm name wherever it may be necessary for the names of counsel to appear.

Now, July 31, 1929, the rule granted on June 3, 1929, to show cause why the writ of attachment should not be quashed is made absolute, and the writ of attachment is quashed.

Now, July 31, 1929, bill of exception sealed to the above order for plaintiff.

From William McElwee, Jr., New Castle, Pa.

NOTE.—In the instant case, the litigation was conducted in the firm name (Aiken & Braham) by an attorney whose name did not appear in the title of the firm.